## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARTE'NEZ DOREZ WISE,

      Petitioner,                  Civil No. 2:11-CV-14294

                                      HONORABLE VICTORIA A. ROBERTS

v.                             UNITED STATES DISTRICT JUDGE

DEBRA SCUTT,

      Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS*

      Marte'nez Dorez Wise, ("Petitioner"), confined at the Cotton Correctional Facility in Jackson, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* habeas petition, Petitioner challenges his conviction and sentence for one count each of assault with intent to commit murder, M.C.L.A. 750.83, armed robbery, M.C.L.A. 750.529, and being a fourth felony habitual offender, M.C.L.A. 769.12.

      For the reasons that follow, the petition for writ of habeas corpus is DENIED.

### I. Background

      A jury convicted Petitioner of the above offenses in Oakland County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F. 3d 410, 413 (6th Cir. 2009):

1

> This case arises out of a violent incident involving defendant and Mark
> Mishler that took place in a hotel room. Mishler testified that defendant
> physically assaulted him, demanded his wallet, and stabbed him repeatedly in
> the face and neck with a woodworking instrument before fleeing Mishler's
> hotel room. Defendant maintained that Mishler made sexual advances toward
> him and then physically attacked him, effectively arguing that he retaliated
> against Mishler in self-defense.

*People v. Wise,* No. 267897, Slip. Op. at * 1 (Mich.Ct.App. October 25, 2007).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 480 Mich. 1136, 746

N.W.2d 86 (2008).

Petitioner then filed a post-conviction motion for relief from judgment pursuant to

M.C.R. 6.500, *et. Seq.,* which was denied. *People v. Wise*, No. 2005-203178 (Oakland

County Cir. Ct. December 8, 2009).  Petitioner filed a motion for reconsideration as well

as a motion to supplement his motion, which was also denied. *People v. Wise*, No.

2005-203178-FC (Oakland County Cir. Ct. May 17, 2010).  The Michigan appellate

courts denied Petitioner's post-conviction appeal. *People v. Wise*, No. 299088 (Mich. Ct.

App. Dec. 12, 2010); *lv. den*. 490 Mich. 858, 802 N.W.2d 343 (2011).

Petitioner seeks a writ of habeas corpus on the following grounds: (1) The

complaint and warrant were defective, (2) Trial counsel was ineffective for: (a) failing to

object to testimonial hearsay when the victim, not his doctors, testified about his injuries;

and (b) waiving a treating doctor's presence,  (3) The prosecutor committed misconduct,

(4) Petitioner's convictions for armed robbery and assault with the intent to commit

murder constituted double jeopardy, (5) Trial counsel was ineffective for: (a) failing to

object to photographs of Mr. Mishler's injuries, (b) failing to use the preliminary

2

examination transcript to impeach Mr. Mishler's credibility, (c) failing to call witnesses, and (d) failing to impeach Mr. Mishler with a prior conviction, (6) Appellate counsel was ineffective, (7) The state court denied Petitioner his right to appeal when it failed to appoint a third appellate attorney, and (8) Cumulative error deprived Petitioner of a fair trial.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

 A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably

applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)(quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

4

"[I]f this standard is difficult to meet, that is because it was meant to be."

*Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the

AEDPA, does not completely bar federal courts from relitigating claims previously

rejected in state courts, it preserves the authority for a federal court to grant habeas relief

only "in cases where there is no possibility fairminded jurists could disagree that the

state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed,

"Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme

malfunctions in the state criminal justice systems,' not a substitute for ordinary error

correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5

(1979)(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a

state court] is inconsistent with the presumption that state courts know and follow the

law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal

court, a state prisoner is required to show that the state court's rejection of his claim

"was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fairminded disagreement."

*Harrington,* 131 S. Ct. at 786-87. Finally, in reviewing Petitioner's claims, this Court

must remember that under the federal constitution, Petitioner was "entitled to a fair trial

but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

### III. Discussion

#### A. Claim # 1. The arrest warrant and criminal complaint.

In his first claim, Petitioner contends that there was no proper arrest warrant or

criminal complaint filed in his criminal case; he says this deprived the court of subject-matter jurisdiction.

The determination of whether a state court is vested with jurisdiction under state law over a criminal case is a function of state courts, not federal courts. *Wills v. Egeler*, 532 F. 2d 1058, 1059 (6th Cir. 1976).  This claim raises an issue of state law; it questions the interpretation of Michigan law. *See United States ex. rel. Holliday v. Sheriff of Du Page County, Ill.*, 152 F. Supp. 1004, 1013 (N.D. Ill. 2001); *Cf. Toler v. McGinnis*, 23 Fed. Appx. 259, 266 (6th Cir. 2001)(district court lacked authority on habeas review to review petitioner's claim that the state court erred in refusing to instruct jury on the requirements for extraterritorial jurisdiction, because the claim was contingent upon an interpretation of an alleged violation of state law).  This claim, therefore,  it is not cognizable in federal habeas corpus review. *See Hogan v. Ward*, 998 F. Supp. 290, 295 (W.D.N.Y. 1998).

Moreover, any possible problems with the arrest warrant would not have deprived the state court of the ability to try Petitioner.  "An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews*, 445 U.S. 463, 474 (1980)(citing *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975)); *See also Frisbie v. Collins*, 342 U.S. 519 (1952); *Ker v. Illinois,* 119 U.S. 436 (1886).  The Supreme Court has held that "[T]he 'body' or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it is conceded that an unlawful arrest, search, or interrogation

6

occurred." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039 (1984).  Although the exclusionary rule prohibits the introduction at trial of evidence that was seized in violation of the constitution, a criminal defendant is not himself a suppressible 'fruit,' and the illegality of his detention cannot deprive the Government of the opportunity to prove his guilt through the introduction of evidence wholly untainted by the police misconduct." *United States v. Crews*, 445 U.S. at 474.  Petitioner does not identify any evidence other than his own body that was seized during this allegedly unlawful arrest. Thus, the mere fact that Petitioner may have been arrested without probable cause would not prevent him from being prosecuted and convicted of this offense.

Finally, a jury's guilty verdict renders harmless any error in the charging decision. *United States v. Mechanik*, 475 U.S. 66, 73 (1986); *See also United States v. Tulk*, 171 F. 3d 596, 598 (8th Cir. 1999)("any injury sustained in the charging process is cured by a subsequent finding of guilt beyond a reasonable doubt").  Any collateral attack on the technical validity of the criminal complaint in this case is unreviewable because Petitioner was convicted by a jury. *See Mattox v. Davis*, 2005 WL 2656610, * 2 (W.D. Mich. October 18, 2005).

Finally, to the extent that Petitioner claims that trial counsel was ineffective for failing to challenge the legality of Petitioner's arrest, he would not be entitled to relief. As mentioned above, Petitioner does not mention any evidence that was obtained from him as a result of the allegedly illegal arrest.  A defendant's warrantless arrest does not render any subsequent identification of the defendant by a witness suppressible fruits of

7

a tainted arrest. *See Martin v. Mitchell,* 280 F. 3d 594, 607 (6th Cir. 2002).  Because Petitioner would have been unable to have the victim's identification of him suppressed as the fruit of an illegal arrest, counsel was not ineffective for failing to move to challenge the legality of the arrest in this case.  *Id.*  Accordingly, Petitioner is not entitled to habeas relief on his first claim.

### B.  Claims #2, #5, #6 and #7.  Ineffective assistance of counsel.

The Court will consolidate Petitioner's second, fifth, sixth and seventh claims because they all involve challenges to the effective assistance of counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland*, 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "*Strickland's* test for prejudice is a demanding one. 'The likelihood of a different

8

result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011)(quoting *Harrington v. Richter*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt*, 395 F. 3d 602, 617 (6th Cir. 2005).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123 (citing *Yarborough,* 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in

9

operation when the case involves review under the *Strickland* standard itself."

*Harrington*, 131 S. Ct. at 785.  "Surmounting *Strickland's* high bar is never an easy

task." *Id*. at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

>    Because of this doubly deferential standard:

> Federal habeas courts must guard against the danger of equating
> unreasonableness under *Strickland* with unreasonableness under § 2254(d).
> When § 2254(d) applies, the question is not whether counsel's actions were
> reasonable.  The question is whether there is any reasonable argument that
> counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 131 S. Ct. at 788.

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to

cast doubt on a trial that took place" over eight  years ago and a direct appeal that

concluded almost six years ago "is precisely what *Strickland* and AEDPA seek to

prevent*." Harrington v. Richter,* 131 S. Ct. at 789.

In his second claim, Petitioner contends that counsel was ineffective for failing to

object to the admission of testimonial hearsay and failing to call Mr. Mishler's

emergency room physician as a witness.  Petitioner argues that Mr. Mishler improperly

testified to the nature, severity and treatment of his wounds and had Dr. Jacobs been

called as a witness, the doctor's testimony would have refuted significant portions of

Mishler's testimony.

 Out of court statements that are testimonial in nature are barred by the Sixth

Amendment Confrontation Clause unless the witness is unavailable and the defendant

has had a prior opportunity to cross-examine the witness, regardless of whether such

10

statements are deemed reliable by the court. *See Crawford v. Washington*, 541 U.S. 36 (2004). However, the Confrontation Clause is not implicated, and thus does not need to be considered, when non-testimonial hearsay is at issue. *See Davis v. Washington*, 547 U. S. 813, 823-26 (2006); *See also Desai v. Booker*, 538 F.3d 424, 425-26 (6th Cir. 2008). Testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy. *Crawford*, 541 U.S. at 51-52, 56.

Statements made by Mark Mishler to Dr. Jacobs were made in the course of Mishler's medical treatment and diagnosis and were thus admissible pursuant to M.R.E. 803(4). Medical reports that are created for treatment purposes are not considered testimonial by the Supreme Court. See *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527, 2533, n. 2 (2009). The admission of Dr. Jacob's medical report would not violate Petitioner's Sixth Amendment right to confrontation. Accordingly, Mr. Mishler's testimony pertaining to the nature of his injuries was properly admitted. Mishler knew that he was stabbed in the back of his head, above and below his left nipple, and had his throat slit from ear to ear. Mishler also knew he was stabbed in his neck's carotid artery. (T 10/27/05, 170). Mishler's testimony pertained to the consent given to perform the procedures. (*Id*. at 171). Mishler had personal knowledge regarding his consent, and he later identified the photograph of the scar on his upper left thigh, adding that it was "a graft." (*Id*.). Furthermore, Mishler confirmed that he authorized the hospital to remove a vein to repair his carotid artery. (*Id*.). Because Mishler's testimony about the medical

11

treatment that he received did not violate the Confrontation Clause, counsel was not ineffective for failing to object to its admission on this basis. *See e.g. U.S. v. Johnson*, 581 F. 3d 320, 328 (6th Cir. 2009).

Petitioner also claims that his retained attorney was ineffective because he waived Dr. Jacobs as a witness. (T 10/27/05, 180-181).  On this claim, Petitioner does not provide the substance of Dr. Jacobs' proposed testimony.  Petitioner offers nothing to suggest that Dr. Jacobs would have testified favorably on his behalf.  In the absence of such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to call Dr. Jacobs as a witness at trial, so he cannot support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller*, 490 F. 3d 551, 557 (6th Cir. 2007).

Moreover, counsel's decision to avoid calling Dr. Jacobs may have been a strategic decision to avoid eliciting damaging testimony.   Petitioner did not deny "swinging" at Mishler or slashing his throat after grabbing Mishler's wood-carving tool/knife; instead, he claimed he acted in self-defense to save his own life. (T 10/27/05, 205, 219). This was the defense presented, as agreed upon by Petitioner and his retained attorney (*Id*. at  217).

Dr. Jacob's report confirmed that Mishler had his throat cut and that his neck and chest had been stabbed repeatedly.  Although Dr. Jacobs did describe Mishler's "multiple" slashings as "superficial" and noted no "active bleeding," the record reflects that following the incident, Mishler told the 911 operator he was bleeding heavily and

12

was told to get a clean towel.  Presumably, police and fire personnel who arrived at the scene and transported Mishler to the hospital managed to stop the bleeding by the time Dr. Jacobs examined him.  The record also reflects that Mishler underwent surgery to repair damage to his carotid artery. (*Id*. at 152, 190).

Petitioner failed to demonstrate that trial counsel's choice not to call the treating physician was anything other than trial strategy; nor does Petitioner demonstrate that the treating physician would have testified favorably on his behalf .  Counsel was not ineffective for failing to call Dr. Jacobs to testify at trial, and Petitioner is not entitled to relief on his second claim.

Petitioner's fifth claim also alleges that trial counsel was ineffective for failing to object to prejudicial photos, provide meaningful adversarial testing, and failing to secure an expert witness in defensive wounds.

Petitioner raised a challenge to his counsel's failure to produce Dr. Jacobs in his second claim.  This issue has been addressed.  Since Petitioner has not shown the existence of another witness nor favorable testimony that would have been presented, there is no merit to this part of Petitioner's fifth claim.

Petitioner alleges he was prejudiced when trial counsel failed to object to the photographs of Mr. Mishler's injuries, claiming that the photographs were prejudicial and irrelevant to the issues in dispute.  Petitioner, however, concedes that these photographs accurately depicted the location of the wounds inflicted on the victim with the exception of the graft site, which was unrelated to the initial assault.  Petitioner offers

13

this Court no reason why these photographs would have been prejudicial and irrelevant on the issue of Petitioner's intent to kill.  Trial counsel was not ineffective for failing to raise a futile objection. *See U.S. v. Johnson*, 9 Fed.Appx. 373, 374 (6th  Cir. 2001)(citing *McQueen v. Scroggy*, 99 F.3d 1302, 1328 (6th Cir. 1996)).

Petitioner next contends that his right to cross-examination was denied by the hasty action of counsel who proceeded to trial unprepared.  "Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel."  *Dell v. Straub*, 194 F. Supp. 2d 629,  651 (E.D. Mich. 2002). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.*

Defense counsel's performance did not constitute ineffective assistance of counsel where the record shows that defense counsel carefully cross-examined the prosecution witnesses and in his closing argument emphasized the inconsistencies and weaknesses in the testimony. *See Krist v. Foltz*, 804 F. 2d 944, 948-49 (6th Cir. 1986); *Millender v. Adams*, 187 F. Supp. 2d 852, 872 (E.D. Mich. 2002).

As a related claim, Petitioner contends that trial counsel was ineffective for failing to examine the preliminary examination transcript and use it to impeach Mishler's credibility.  The Michigan Court of Appeals rejected this claim, holding that Petitioner failed to show how the various statements made by Mishler were contradictory. *Wise,* Slip. Op. at * 4.

14

Petitioner failed to identify how additional impeachment of Mr. Mishler would have affected the jury's decision.  Defense counsel did not perform ineffectively by not more forcefully cross-examining Mr, Mishler, particularly when the effect of further probing was entirely speculative on Petitioner's part. *See Jackson v. Bradshaw,* 681 F.3d 753, 764-65 (6th Cir. 2012); *cert. den. sub. nom. Jackson v. Robinson,* 133 S. Ct. 983 (2013).

Petitioner claims that trial counsel was ineffective for failing to investigate or call a number of *res gestae* witness.  Although Petitioner briefly mentioned the names of several witnesses whom he contends should have been called on his behalf, Petitioner failed to attach any affidavits from these witnesses to his state court pleadings; nor has he provided this Court with affidavits from these witnesses concerning their proposed testimony and willingness to testify on Petitioner's behalf.  Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998).  By failing to present evidence to the state courts in support of this ineffective assistance counsel of claim, Petitioner is not entitled to an evidentiary hearing. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)).   And, in the absence of such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to call these witnesses to testify at trial.  Petitioner fails to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller*, 490 F. 3d at 557.

Petitioner contends that trial counsel was ineffective for failing to impeach Mr.

15

Mishler with a prior conviction for attempting to carry a concealed weapon (C.C.W.) and that Mishler's ex-wife had unsuccessfully attempted to obtain a personal protection order (PPO) against him.

Under Michigan law, "prior convictions for nontheft crimes which do not contain elements of dishonesty or false statement should never be admitted into evidence" for impeachment purposes. *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 608 (E.D. Mich. 2001)(quoting *People v. Allen*, 429 Mich. 558, 596; 420 N.W. 2d 499 (1988)). Petitioner has failed to show that either the attempted C.C.W. conviction or the unsuccessful attempt by Mr. Mishler's wife to obtain a P.P.O. would have been admissible for impeachment purposes pursuant to M.R.E. 609(a). Thus, Petitioner has failed to show that counsel was ineffective for failing to attempt to impeach Mr. Mishler with this information. *See e.g. Pillette v. Berghuis,* 408 F. App'x. 873, 890-91 (6th Cir. 2010).

In his sixth claim, Petitioner claims that appellate counsel was ineffective for failing to raise several of Petitioner's claims on his appeal of right.

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). This Court reviewed all of Petitioner's claims and determines them to be without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that

16

lacks merit.'" *Shaneberger v. Jones*, 615 F. 3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because none of Petitioner's claims can be shown to be meritorious, appellate counsel was not ineffective in handling Petitioner's direct appeal. Petitioner is not entitled to habeas relief on his ineffective assistance of appellate counsel claim.

In his related seventh claim, Petitioner contends that he was denied his right to appellate counsel when the state courts denied his request for a third court-appointed appellate counsel.

Petitioner did not file a motion for a third court-appointed appellate counsel until six months after his second court-appointed appellate counsel filed his appellate court brief and had also assisted Petitioner in filing Petitioner's pro per supplemental appellate court brief and motion. This was also long after Petitioner's first court-appointed appellate attorney had been permitted to withdraw after Petitioner had filed a complaint against him with the Attorney Grievance Commission.

"A defendant is required to show good cause for a request to substitute counsel and to do so in a timely manner."*See United States v. Williams,* 176 F. 3d 301, 314 (6th Cir. 1999). In determining whether a court abuses its discretion in denying a motion for substitute counsel, a reviewing court should consider the timeliness of the motion, the adequacy of the trial court's inquiry into the defendant's complaint, whether the conflict between the attorney and the client is so great that it resulted in a total lack of communication which prevented an adequate defense, and a balancing of these factors

17

with "the public's interest in the prompt and efficient administration of justice." *Id.* (*citing United States v. Jennings*, 83 F. 3d 145, 148 (6th Cir. 1996)).

The trial court did not clearly err in denying Petitioner's request for a third court-appointed appellate attorney in light of the timing of his request as discussed above. Moreover, Petitioner is unable to show that he was prejudiced by the failure of the trial court to appoint a third court-appointed appellate attorney, in light of the fact that Petitioner received effective assistance of counsel on his direct appeal. *United States v. Vasquez,* 560 F. 3d 461, 468 (6th Cir. 2009). "The strained relationship" between Petitioner and his attorney was not a "complete breakdown in communication" which prevented Petitioner from receiving an adequate appeal. *Id.* Petitioner is not entitled to habeas relief on his seventh claim.

### C.  Claim # 3.  Prosecutorial misconduct.

Petitioner contends that he was deprived a fair trial because of prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir.2004)(*citing Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)(quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Prosecutorial misconduct will thus form the basis for habeas relief

18

only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. at 643-45. Moreover, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006)(*quoting Donnelly*, 416 U.S. at 645). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012)(quoting *Harrington*, 131 S. Ct., at 786–87). This is particularly so, "because the *Darden* standard is a very general one, leaving courts 'more leeway ... in reaching outcomes in case-by-case determinations[,]'". *Id.* (quoting *Yarborough v. Alvarado*, 541 U.S. at 664).

Petitioner initially contends that the prosecutor argued facts that had not been introduced into evidence when he argued that Petitioner "found out that the victim had money in his wallet[.]" Petitioner claims that the prosecutor also injected facts that were not part of the record for arguing that the bartender could have seen Mr. Mishler reach in his wallet and pay for some beers and for arguing that the bartender knew that Mishler had too much to drink and might be an "easy mark." Petitioner also contends that the prosecutor commented on facts not introduced into evidence by referring to Mishler as

19

"an honest working artist" and "a mature grown man."

The misrepresentation of facts in evidence by a prosecutor can amount to substantial error; doing so "may profoundly impress a jury and may have a significant impact on the jury's deliberations." *Washington v. Hofbauer,* 228 F.3d 689, 700 (6th Cir. 2000)(quoting *Donnelly v. DeChristoforo*, 416 U.S. at 646). Likewise, it is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). However, prosecutors must be given leeway to argue reasonable inferences from the evidence. *Id.*

The prosecutor's arguments were based on reasonable inferences from the evidence. Mishler testified that he had $ 250.00 in his wallet, had drank a number of beers, and was intoxicated. The evidence established that Petitioner was not drinking and knew that Mishler was intoxicated. Petitioner regularly frequented the bar and testified himself that Mishler bought a beer. With respect to the comments concerning Mishler's profession and age, Mishler testified that he was a tattoo artist who owned a tattoo shop and had done tattoos for 31 years. Mishler also testified that he did air brushing and wood carving and was certified in nine other artistic fields. The prosecutor's comments were a fair comment on the evidence.

Moreover, any alleged prosecutorial misconduct in attempting to inject facts that had not been introduced into evidence was also ameliorated by the trial court's instruction that the lawyers' comments and statements were not evidence. (T 10/28/05,

20

36-41).  *See Hamblin v. Mitchell,* 354 F.3d 482, 495 (6th Cir. 2003).

Petitioner contends that the prosecutor committed misconduct by arguing that Mishler's demeanor on the 911 tape could be used by the jury in evaluating his credibility.  However, the prosecutor was free to argue that the witness should be believed based on the evidence presented, including Mishler's panicked state on the 911 call. *See United States v. Reid,* 625 F. 3d 977, 985 (6th Cir. 2010).

Petitioner contends that the prosecutor injected his personal opinion in his arguments by using the words "I think."

A prosecutor may not express a personal opinion concerning the guilt of a defendant or the credibility of trial witnesses; such personal assurances of guilt or vouching for the veracity of witnesses by the prosecutor "exceeds the legitimate advocates' role by improperly inviting the jurors to convict the defendant on a basis other than a neutral independent assessment of the record proof." *Caldwell v. Russell*, 181 F. 3d 731, 737 (6th Cir. 1999).  However, a prosecutor is free to argue that the jury should arrive at a particular conclusion based upon the evidence. *Id.*  Moreover, to constitute error, a prosecutor's alleged misconduct in arguing his personal belief, of a witness's credibility or a defendant's guilt, must be flagrant. *See United States v. Humphrey,* 287 F. 3d 422, 433 (6th Cir. 2002).

Petitioner admits that two of the times the prosecutor used the words "I think," were made while he referred to the evidence.  Because these statements were made in the context of discussing the evidence, they do not amount to improper expressions of

21

personal opinion. *See West v. Bell,* 550 F. 3d 542, 565-66 (6th Cir. 2008). With respect to the third time, the prosecutor was opining that he would not expect the jurors to believe that Mishler had attempted to grab Petitioner's genitals, given Mishler's facial expression when the prosecutor asked him if he had any homosexual tendencies. Because this argument was based on the evidence, that is, Mishler's demeanor, it was not an inappropriate expression of a personal opinion.

Petitioner contends that the prosecutor misstated the facts and the law regarding Petitioner's self-defense claim by pointing out that Mishler was unarmed. Petitioner, however, testified that Mishler was unarmed. Moreover, the judge instructed the jurors on the law of self-defense, that the parties' arguments were not evidence, and that the jurors were to apply the law as given by the court. (T 10/28/05, 37, 39, 47-50).

In light of the trial court's instructions on the law of self-defense, any misstatements by the prosecutor concerning the elements of self-defense was harmless error, at worst. *See United States v. Deitz,* 577 F. 3d 672, 696-97 (6th Cir. 2009).

Petitioner contends that the prosecutor committed misconduct by failing to give him pre-trial notice of his intention to use Petitioner's prior conviction to impeach his credibility.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus,

22

errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *See Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

Petitioner's challenge to the state trial court's decision to allow the prosecutor to use petitioner's prior conviction for impeachment purposes is not cognizable on habeas review, because it does not present a constitutional issue. *See Peoples v. Fulcomer,* 731 F. Supp. 1242, 1244 (E.D. Pa. 1990).

Petitioner contends that the prosecutor withheld exculpatory evidence: a statement from Mishler - that he had spent a considerable amount of money before meeting up with Petitioner, and a copy of the preliminary examination transcript.

Suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). There are three components to a *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Petitioner has failed to offer any evidence or argument to show that any of this evidence contained exculpatory material. As the Michigan Court of Appeals noted in rejecting Petitioner's claim, *Wise,* Slip. Op. at * 4, Petitioner failed to show that

23

Mishler's statement that he had spent a considerable amount of money prior to meeting up with Petitioner contradicted Mishler's testimony that he had a specific amount of money in his possession at the time of the crime.  The burden is on a habeas petitioner to prove that evidence that is required to be disclosed to him under *Brady* was not disclosed to him. *Coe v. Bell*, 161 F. 3d 320, 344 (6th Cir. 1998).  Allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. *Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004).  "[M]ere speculation that a government file may contain *Brady* material is not sufficient" to prove a due-process violation. *United States v. Driscoll*, 970 F. 2d 1472, 1482 (6th Cir.1992), *abrogated on other grounds by Hampton v. United States*, 191 F.3d 695 (6th Cir.1999).  Petitioner has failed to show that any of this evidence exculpated him of this crime.  Petitioner is not entitled to habeas relief on his *Brady* claim. *Burns,* 328 F. Supp. 2d at 724.

Petitioner contends that the prosecutor violated his right to remain silent by questioning him about his failure to seek medical treatment and report Mishler's alleged sexual assault to the police, and then by arguing that his failure to report his claimed story about Mishler's sexual assault to the police could be used by the jurors to judge his credibility.

The Supreme Court held that use of a defendant's pre-arrest silence for impeachment purposes does not violate the Fifth Amendment right against self-incrimination or the Fourteenth Amendment right to due process. *Jenkins v. Anderson*, 447 U.S. 231, 238-39 (1980).  In addition, in the absence of  indication that a

24

criminal defendant had received his *Miranda* warnings, the use of post-arrest silence to impeach a defendant's credibility when that defendant chooses to take the witness stand does not violate the Due Process Clause. *See Fletcher v. Weir,* 455 U.S. 603, 606-07 (1982). In *Fletcher,* the Supreme Court held that it was not unconstitutional for a prosecutor to use the defendant's post-arrest silence for impeachment purposes, where the defendant testified at trial that he stabbed the victim in self-defense and that the stabbing was accidental. *Id.*

Petitioner testified that Mishler reached between his legs and tried to grab his genitals. Petitioner testified that he smacked Mishler's hands down and that Mishler hit him in the mouth, causing Petitioner to lose a tooth, before grabbing Petitioner by the neck. Petitioner stated that while trying to get up, his hand grabbed a carving tool, which he swung at Mishler.

References to Petitioner's pre-arrest silence would have been permissible under *Jenkins* to impeach his credibility. Likewise, because there is no indication that any *Miranda* warnings had been given to Petitioner, or that he invoked his right to silence under Miranda, any references to Petitioner's failure to seek medical treatment or to report Mishler's alleged sexual assault to the police did not violate his constitutional rights and would have been permissible to impeach the credibility of his self-defense claim. *See Seymour v. Walker,* 224 F.3d 542, 560 (6th Cir. 2000).

Petitioner contends that the prosecutor made an improper "civic duty" argument. With regards to civic or societal duty arguments, the Sixth Circuit notes that "[u]nless

25

calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not *per se* impermissible." *Byrd v. Collins,* 209 F. 3d 486, 539 (6th Cir. 2000)(*quoting United States v. Solivan*, 937 F. 2d 1146, 1151 (6th Cir. 1991)).

The prosecutor's "less than-pointed-remarks" did not rise to the level of remarks designed to incite prejudice in a jury, thus defeating petitioner's "civic duty" argument claim. *See Puetas v. Overton,* 168 Fed. Appx. 689, 701 (6th Cir. 2006).  Additionally, the trial court's instruction to the jury that they must not let prejudice or sympathy influence their decision (T 10/28/05, 36) defeats Petitioner's claim that he was deprived of a fair trial because of an improper civic duty argument.  *See Knapp v. White,* 296 F. Supp. 2d 766, 776 (E.D. Mich. 2003).

Finally, Petitioner contends that trial counsel was ineffective for failing to object to the alleged prosecutorial misconduct in this case.  To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different.  *Hinkle v. Randle,* 271 F. 3d 239, 245 (6th Cir. 2001).  Because the Court has already determined that the prosecutor's arguments did not deprive Petitioner of a fundamentally fair trial, Petitioner is unable to establish that he was prejudiced by counsel's failure to object to these remarks. *Slagle,* 457 F. 3d at 528.  Petitioner is not entitled to habeas relief on his third claim.

26

### D.  Claim # 4.  Double Jeopardy.

Petitioner claims that his convictions for felon in possession of a firearm and felony-firearm violate the Double Jeopardy Clause because both convictions involve the same weapon.  Petitioner also claims that his trial counsel was ineffective for failing to object to the convictions on this basis.

The Double Jeopardy Clause serves the function of preventing both successive punishments and successive prosecutions. *United States v. Ursery*, 518 U.S. 267, 273 (1996).  The protection against multiple punishments prohibits the government from "punishing twice or attempting a second time to punish criminally for the same offense." *Witte v. United States*, 515 U.S. 389, 396 (1995)(quoting *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938)).  Although the Double Jeopardy Clause protects a defendant against cumulative punishments for convictions on the same offense, the clause does not prohibit the state from prosecuting a defendant for such multiple offenses in a single prosecution. *See Ohio v. Johnson,* 467 U.S. 493, 500 (1984).  Moreover, whether punishments are multiple, so as to violate the Double Jeopardy Clause, is essentially a question of legislative intent. *Id.* at 499.

When multiple convictions are secured at a single trial, the test for determining whether two offenses are sufficiently distinguishable to permit the imposition of cumulative punishment is that set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *Brown v. Ohio*, 432 U.S. 161, 166 (1977).  As the Supreme Court explained that test in *Brown*:

27

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not····" This test emphasizes the elements of the two crimes. "If each requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes····"

*Id*. at 166 (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n. 17 (1975)).

"The Court focuses on the statutory elements of the two crimes with which a defendant has been charged, not on the proof that is offered or relied upon to secure a conviction.... If each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." *United States v. Barrett*, 933 F. 2d 355, 360-61 (6th Cir. 1991)(internal citations and quotes omitted). Thus, the Double Jeopardy Clause is not violated merely because the same evidence is used to establish more than one statutory violation. *See United States v. Dixon*, 509 U.S. 688, 696 (1993).

Moreover, in deciding a habeas petitioner's Double Jeopardy claim, a federal habeas court is bound by a state appellate court's interpretation of different state statutes to permit a defendant who is convicted of multiple offenses to be punished for both offenses. *See Palmer v. Haviland,* 273 Fed. Appx. 480, 486-87 (6th Cir. 2008). Once a state court has determined that the state legislature intended cumulative punishments for separate offenses, a federal habeas court must defer to that determination. *See Banner v. Davis,* 886 F. 2d 777, 780 (6th Cir. 1989). The Michigan Court of Appeals determined

28

that the Michigan Legislature intended cumulative punishment for the offenses of felon

in possession of a firearm and felony-firearm. See *People v. Dillard,* 246 Mich. App.

163, 166-171; 631 N.W. 2d 755 (2001).  This Court sitting on federal habeas review is

bound by that determination. *Banner,* 886 F. 2d at 780.   Because this determination is

binding in federal habeas corpus, Petitioner's claim that his convictions for both

possession of a firearm by a felon and possession of a firearm during the commission of

a felony violate the Double Jeopardy Clause must be rejected. *See Rodgers v. Bock,* 49

Fed. Appx. 596, 597 (6th Cir. 2002).

Since Petitioner's convictions for both offenses did not violate the Double

Jeopardy Clause, counsel was not ineffective for failing to object on this basis. *Compare*

*Fudge v. U.S.,* 673 F. Supp. 2d 568, 580-81 (W.D. Mich. 2009).  Petitioner is not entitled

to relief on his fourth claim.

### E. Claim # 8.  Cumulative error.

Petitioner contends that he is entitled to habeas relief because of cumulative error

or counsel's ineffectiveness in failing to object to the cumulative errors.

The cumulative weight of alleged constitutional trial errors in a state prosecution

does not warrant federal habeas relief; there is no clearly established federal law

permitting or requiring the cumulation of distinct constitutional claims to grant habeas

relief. *Moore v. Parker,* 425 F. 3d 250, 256 (6th Cir. 2005).  Therefore, Petitioner is not

entitled to habeas relief on this ground.  Moreover, absent any showing that any of

Petitioner's claims have merit, trial counsel was not ineffective for failing to object to

any of the alleged errors here, either individually or as cumulative. *See e.g. Jackson v. Shanks,* 143 F. 3d 1313, 1321 (10th Cir. 1998).  Petitioner is not entitled to habeas relief on his eighth claim.

### IV.  Conclusion

The Court denies the petition for writ of habeas corpus.  The Court also denies a certificate of appealability to Petitioner.  To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court denies Petitioner a certificate of appealability; he failed to make a substantial showing of the denial of a federal constitutional right. *See Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

Although this Court denies a certificate of appealability, the standard for granting

an application for leave to proceed *in forma pauperis* (IFP) is lower than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765.

Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V.  ORDER

**The Court DENIES** the Petition for Writ of Habeas Corpus and a Certificate of Appealability**.**

Petitioner is **GRANTED** leave to appeal *in forma pauperis.*


S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  November 26, 2013

31

The undersigned certifies that a copy of this document was served on the attorneys of record and Marte'nez Dorez Wise by electronic means or U.S. Mail on November 26, 2013.

S/Linda Vertriest
Deputy Clerk